UNITED STATES DISTRICT COURT  
EASTERN DISTRICT OF NEW YORK

FOR PUBLICATION

---

GOVERNMENT EMPLOYEES INSURANCE CO., GEICO INDEMNITY CO., GEICO GENERAL INSURANCE CO., GEICO CASUALTY CO.,

       Plaintiffs,

- versus -

FIVE BORO PSYCHOLOGICAL SERVICES, P.C., ALL BORO PSYCHOLOGICAL SERVICES, P,C., FIVE BORO PSYCHOLOGICAL AND LICENSED MASTER SOCIAL WORK SERVICES P.L.L.C., VLADIMIR GRINBERG, JOHN R. BRAUN, PH.D.,

       Defendants.

MEMORANDUM & ORDER

No. 12 Civ. 2448

---

APPEARANCES

  RIVKIN RADLER, LLP  
    926 Rexcorp Plaza  
    Uniondale, NY 11556  
  By: Max S. Gershenoff  
    *Attorney for Plaintiffs*

  GARY TSIRELMAN, P.C.  
    65 Jay Street, 3rd Floor  
    Brooklyn, NY 11201  
  By: Nicholas P. Bowers  
    Gary Tsirelman  
    *Attorneys for Defendants*

JOHN GLEESON, United States District Judge:

    In this civil action, Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company, and GEICO Casualty Co. (collectively referred to here by the singular "GEICO") seek to recover, before trebling, over $2 million in damages arising from its payment of Defendants' allegedly fraudulent bills for no-fault insurance benefits. GEICO also seeks a declaration that it is not obligated to pay almost $8

million dollars in what GEICO alleges are "pending fraudulent" no-fault bills for psychological services.  Compl. ¶¶ 1, 2., ECF No. 1.  GEICO asserts claims against Defendants Five Boro Psychological Services, P.C., All Boro Psychological Services, P.C., Five Boro Psychological and Licensed Master Social Work Services, P.L.L.C. (the "P.C. Defendants"), and Vladimir Grinberg[1] and John R. Braun, Ph.D, (the "Management Defendants").[2]

GEICO's claims fall into three categories: (1) efforts to recoup money from past no-fault bills that GEICO paid in full; (2) efforts to recoup money from past no-fault bills that GEICO partially paid; (3) a declaration that unpaid no-fault bills – many of which are the subject of pending state court litigation – need not be paid at all.[3]

On September 7, 2012, the P.C. Defendants and John R. Braun (the "Moving Defendants" or "Defendants") moved pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 and N.Y. Ins. Law § 5106(b) for an order compelling arbitration of the first two categories of claims.[4]  Defs.' Mem. of Law in Support of Mot. to Compel Arbitration 2-6, 7-8, Sept. 7, 2012, ECF No. 35.  As for the third category, Defendants first ask the Court to abstain from resolving GEICO's declaratory judgment action with respect to "unpaid claims that are already being adjudicated in other forums," *id.* at 8.  In the alternative, they move to compel arbitration of GEICO's claim for declaratory relief with respect to all other pending claims.  *Id.*  Plaintiffs oppose the motion.  Pls.' Mem. of Law in Opp'n to Mot. to Compel, Oct. 5, 2012, ECF No. 45.

---

[1]      Defendant Grinberg is a licensed social worker who "co-owns" and "manage[s]" the PC Defendants, and "is one of the architects and engineers of the Defendants' fraudulent scheme." Compl. ¶ 3(iii).

[2]      Defendant Braun is a licensed psychologist who "purports to own" the remaining Moving Defendants, which are professional corporations or professional limited liability corporations through which these services are provided.  Compl. ¶ 3(ii),

[3]      This is one of a series of like cases recently filed in this District.  *See e.g.*, *Allstate Ins. Co. v. Lyons*, 843 F.Supp.2d 358 (E.D.N.Y. 2012); *Allstate Ins. Co. v. Khaimov*, No. 11 Civ 2391, 2012 WL 664771 (E.D.N.Y. Feb 29, 2012); *Liberty Mut. Ins. Co. v. Excel Imaging, P.C.*, 879 F.Supp.2d 243 (2012); *Gov't Emp. Ins. Co. v. Grand Med. Supply, Inc.*, 11 Civ 5339, 2012 WL 2577577 (E.D.N.Y. July 4, 2012).

[4]      On September 28, 2012, Defendant Grinberg moved to vacate the entry of default, a motion I referred to Magistrate Judge Vera Scanlon.  On February 25, 2013 I adopted Magistrate Judge Scanlon's recommendation that entry of default be vacated and, on January 30, 2013, Grinberg filed an answer to the Complaint.  Grinberg has moved to join in the motion to compel arbitration.  *See* Mot. to Join in Mot. to Compel, Jan 11, 2013, ECF No. 72.  Considering the procedural posture of this case and that the allegations against Grinberg are similar to Moving Defendant Braun, this request is granted.

Oral argument on the motion was heard on December 3, 2012. For the reasons set forth below, Defendants' motion is denied in part and granted in part. First, for the reasons discussed in my prior decision in *Allstate Insurance Company v. Lyons*, 843 F.Supp.2d 358 (E.D.N.Y. 2012), GEICO's affirmative claims to recover no-fault benefits that they already paid in reliance on Defendants' fraudulent billing do not fall within the scope of N.Y. Ins. Law § 5106(b) and, accordingly, Defendants have no right to compel arbitration of disputes over those claims. Second, abstention is inappropriate with respect to GEICO's Declaratory Judgment claim. Defendants' motion to compel arbitration of GEICO's disputes about pending and unpaid claims, which are currently the subject of hundreds of pending lawsuits brought by the Defendants in various state courts, is denied because the Defendants have waived their right to arbitrate by electing to litigate those disputes to the brink of fruition in those courts. Third, Defendants' motion to compel arbitration is granted with respect to the portion of the declaratory judgment claim relating to pending or unpaid claims that are not currently being litigated in state court (unless the Defendants choose to litigate those claims in state court or in this case).

## BACKGROUND

A. *GEICO's Allegations*

On May 15, 2012, GEICO brought sixteen causes of action against the Defendants. Six of them allege violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Specifically, GEICO alleges that it paid at least $729,000 (purportedly for psychological services) pursuant to fraudulent bills submitted by "Five Boro, P.C.," $1,249,000 pursuant to fraudulent bills submitted by "All Boro," and $147,000 pursuant to fraudulent bills submitted by "Five Boro, PLLC." *See id.* ¶¶ 113, 120, 147, 154, 181, 188. Six causes of action allege common law fraud and aiding and abetting fraud, and three causes of action allege unjust enrichment. *Id.* ¶¶ 130, 137, 171, 198, 205. Finally, GEICO seeks a

3

declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 and § 2202, that Defendants "have no right to receive payment for any pending bills submitted to GEICO." *Id.* ¶ 103.  The complaint annexes exhibits that "summarize, in part, the fraudulent charges identified to date that Defendants have submitted, or caused to be submitted, to GEICO." *Id.* ¶ 5.  This exhibit lists approximately 15,350 individual claims submitted between April 2004 and May 2011.  *See* Ex. 2-4, ECF No. 1.

B.      *The Alleged Fraudulent Scheme*

The factual allegations set forth herein, which are assumed true for purposes of this motion, are drawn from the well-pleaded allegations in the Complaint and its incorporated exhibits.  At the core of its complaint are allegations that GEICO paid monies to the Defendants in reliance on bills the Defendants submitted for reimbursement, which GEICO later discovered were fraudulent.  GEICO alleges that the Defendants engaged in a "complex fraudulent scheme" to inflate charges, provide useless or unnecessary services, obtain access to insured persons through kickbacks, and provide services through fraudulent, pre-determined protocols. *See id*. ¶¶ 29-76.  Defendants "systematically . . . concealed their fraud," going to "great lengths to accomplish this concealment," thereby "induc[ing] GEICO to promptly pay the fraudulent charges for the fraudulent psychological services," *id.* ¶ 91.  GEICO "did not discover and could not reasonably have discovered that its damages were attributable to fraud until shortly before it filed" the instant Complaint.  *Id.* ¶ 100.

Defendants obtained access to persons who claim to have been injured in automobile accidents "though the payment of kickbacks . . . to healthcare clinics located throughout the New York area." *Id.* ¶ 31.  In exchange for kickbacks, these clinics referred insured persons to the Defendants for psychological treatment, and, in turn, the Defendants submitted fraudulent bills for medically and psychologically unnecessary services.  *Id.* ¶¶ 1, 2, 28, 65, 75, 105.  Since the payment of kickbacks for patient referrals is "prohibited by, *inter*

4

*alia*, the New York Education Law, 8 N.Y.C.R.R. § 29.1 and 29.12,"[5] *id.* ¶ 26, GEICO alleges that Defendants are in violation of these regulations and, therefore, their bills "misrepresent that the PC Defendants are lawfully licensed and eligible to bill and collect No-Fault Benefits, when in fact they are not." *Id.* ¶ 92

Moreover, the bills were fraudulent insofar as the services provided did not involve "any independent assessment of any Insured's discrete symptoms," *id.* ¶ 43. Each insured was "subjected to a virtually identical series of unnecessary psychological services . . . pursuant to a fraudulent, pre-determined protocol" designed to maximize billings. *Id.* ¶ 38; *see also* ¶¶ 44, 53, 65. Defendants inflated the amount of time spent on the services solely to maximize billing, *id.* ¶ 46, "use[d] boilerplate language from pre-existing reports," *id.* ¶ 50, and then "sign[ed] the reports . . . without reviewing them," *id.* ¶ 50. As a result, the Defendants made "phony" diagnoses of serious psychological ailments "regardless of [the patients'] individual circumstances," and despite that fact that "virtually every claim [at issue] . . . involve[d] . . . . trivial 'fender benders.'" *Id.* ¶¶ 54, 58. The Defendants billed for diagnostic interview examinations "either not performed at all, or . . . not meant to have any benefit for the Insureds," *id.* ¶ 69, and then charged GEICO for psychotherapy sessions that "materially misrepresent[ed] and exaggerate[ed] the level of services provided," *id.* ¶ 76. Since the services were provided as a result of a kickback arrangement, the bills were fraudulent for the additional reason that they were provided by persons not "lawfully licensed" even if the services billed were actually provided. *Id.* ¶¶ 124, 158, 192.

C.      *New York State No-Fault Law*

---

[5] 8 N.Y.C.R.R. § 29.1 lists unprofessional conduct "in the practice of any profession licensed, certified or registered pursuant to Title VIII of the Education Law," which includes, *inter alia*, "directly or indirectly offering, giving, soliciting, or receiving or agreeing to receive, any fee or other consideration to or from a third party for the referral of a patient or client or in connection with the performance of professional services." *Id.* § 29.1(b)(3). Moreover, § 29.12 includes "special provisions for the profession of psychology," and incorporates the conduct prohibited by §§ 29.1 and 29.2.

In 1973, the New York State Legislature enacted the Comprehensive Automobile Insurance Reparations Act, *see* N.Y. Ins. Law §§ 5101 through 5109, "to create a simple, efficient system that would provide prompt compensation to accident victims." *State Farm Mut. Auto. Ins. Co. v. Mallela*, 372 F.3d 500, 502 (2d Cir. 2004). The "primary aims" of this law were "to ensure prompt compensation for losses incurred by accident victims without regard to fault or negligence, to reduce the burden on the courts[,] and to provide substantial premium savings to New York motorists." *Matter of Med. Soc'y of State of N.Y. v. Serio*, 100 N.Y.2d 854, 860 (2003).

The Superintendent of Insurance promulgated regulations implementing the No-Fault Law, currently codified in 11 N.Y.C.R.R. part 65. These regulations require no-fault insurers to reimburse patients for "first party benefits" up to $50,000 in Personal Injury Protection Benefits without proving fault on the part of the other driver. "First party benefits" are "payments to reimburse a person for basic economic loss on account of personal injury arising out of the use or operation of a motor vehicle." N.Y. Ins. Law § 5102(b).[6] An insured person has the right to assign any claim to no-fault benefits to his healthcare provider, who in turn, may submit requests for payment directly to insurance companies. *See* 11 N.Y.C.R.R. § 65-3.11(a). The provider may then seek to recoup no-fault benefits directly from the insurance company.

An important feature of New York's no-fault landscape is the requirement that insurers pay or deny a claim within 30 days of receipt of the proof of claim. *See id.* § 65-3.8. Insurers are permitted to "contest ill-founded, illegitimate and fraudulent claims," but they must do so "within a strict, short-leashed contestable period and process designed to avoid prejudice and red-tape dilatory practices." *See Presbyterian Hosp. v. Md. Cas*. Co., 90 N.Y.2d 274, 285 (1997). Any defense not raised in a timely denial within 30 days of receipt of a claim is

---

[6] "Basic economic loss" includes "[a]ll necessary expenses incurred" for medical and other professional health services. N.Y. Ins. Law § 5102(a)(1).

precluded. *Id.* at 283; *see also Fair Price Med. Supply Corp. v. Travelers Indem. Co.* 10 N.Y.3d 556, 565-66 (2008).

Section 5106 of Article 51 of New York Insurance Law provides that claimants are entitled "Fair Claims Settlement" to "assure claimants of expeditious compensation for their injuries through prompt payment of first-party benefits without regard to fault and without expense to them." *New York Hosp. Med. Ctr. of Queens v. MVAIC*, 12 A.D.3d 429, 430 (2d Dep't 2004) (internal quotation marks omitted). Subsection (a) of the § 5106 lays out a procedure for the prompt payment of first-party benefits and provides:

> Payments of first party benefits and additional first party benefits shall be made as the loss is incurred. Such benefits are overdue if not paid within thirty days after the claimant supplies proof of the fact and amount of loss sustained. If proof is not supplied as to the entire claim, the amount which is supported by proof is overdue if not paid within thirty days after such proof is supplied. All overdue payments shall bear interest at the rate of two percent per month. If a valid claim or portion was overdue, the claimant shall also be entitled to recover his attorney's reasonable fee, for services necessarily performed in connection with securing payment of the overdue claim, subject to limitations promulgated by the superintendent in regulations.

N.Y. Ins. Law § 5106(a).

N.Y. Insurance Law § 5106(b) describes the manner by which claimants can resolve disputes related to the making of first party benefits. This provision, which vests insured persons (or their assignees) with the exclusive option to arbitrate certain disputes, provides:

> Every insurer shall provide a claimant with the option of submitting any dispute involving the insurer's liability to pay first party benefits, or additional first party benefits, the amount thereof or any other matter which may arise pursuant to subsection (a) of this section to arbitration pursuant to simplified procedures to be promulgated or approved by the superintendent.

*Id.* § 5106(b). A claimant is not obliged to elect arbitration and may, instead, elect to litigate a dispute. However, when a claimant exercises the right to arbitrate, arbitration is compulsory.

7

*See, e.g.*, *Matter of Furstenberg v. Allstate Ins. Co.*, 49 N.Y.2d 757, 758 (1980) (stating that an insurer "was obliged under the statute to accept the arbitral forum for the resolution of the claim against it").

## DISCUSSION

As mentioned above, GEICO's claims fall into three categories: (1) affirmative claims to recoup money from past no-fault bills that GEICO paid in full in reliance on Defendants' alleged fraud; (2) efforts to recoup money from past no-fault bills that GEICO partially paid in reliance on Defendants' fraud; and (3) a declaration that unpaid bills – many of which are the subject of pending state court litigation – need not be paid at all.

A.  *The Motion to Compel Arbitration of GEICO's Claims for Damages Based on Past Fraudulent Bills*

In *Lyons*, 843 F.Supp.2d at 358, I considered whether an affirmative action by an insurer to recover fraudulently-obtained insurance proceeds was encompassed within the scope of the arbitration provision of New York's Insurance Law, Section 5106(b). I analyzed the scope of subsection (b) and concluded that "[t]he scope of § 5106(b)'s arbitration clause is . . . significantly narrower than defendants suggest: It is limited to disputes that arise from the requirements of subsection (a)." *Lyons*, 843 F.Supp.2d at 378. Subsection (a), in turn, is concerned with ensuring the prompt payment of submitted claims by insurance companies. Construing the statute, I concluded that subsection (a) does not govern an affirmative suit by an insurer to recover monies already timely paid. *See id.* at 378-81; *see also id.* at 379 (noting that, since a "suit in fraud to recover payment timely made . . . does not arise pursuant to subsection (a)," it is outside the scope of the arbitration provision).[7]

Defendants concede that the holding in *Lyons* dooms their motion to compel arbitration of GEICO's claims to recoup monies already paid. *See* Defs.' Mem. in Support of

---

[7] I refrained from deciding if all affirmative claims to recoup payments, even those not originating in fraudulent acts, were also exempt from arbitration. *Lyons*, 843 F.Supp.2d at 379, n.10.

8

Mot. to Compel at 2. However, they urge me to reexamine the issue, contending that *Lyons* "did not address, or adhere to, the well-established canon of statutory interpretation known as the rule of last antecedent." *Id.* at 4. But nothing in the Defendants' analysis persuades me to reconsider my conclusion. I note that two of my colleagues, Judges Weinstein and Cogan, have reached the same conclusion, and the latter explicitly rejected the "rule of last antecedent" argument. *See Liberty Mut. Ins. Co. v. Excel Imaging, P.C.*, 879 F.Supp.2d 243, 262-63 (2012); *Gov't Emp. Ins. Co. v. Grand Med. Supply, Inc.*, 11 Civ 5339, 2012 WL 2577577, at *6 n.1 (E.D.N.Y. July 4, 2012). Accordingly, I deny defendant's motion to compel arbitration of GEICO's action to recoup fraudulently-obtained monies from paid no-fault bills.

Defendants also contend that *Lyons* should not apply to GEICO's efforts to recoup funds paid when GEICO only partially paid of a bill. *See* Defs.' Mot. to Compel Arbitration at 7. In support of this argument, defendants attach "representative examples of litigation related to partially paid claims." *Id.* (referring to Exhibits C-1, C-2, and C-3, ECF No. 35). These exhibits provide examples of claims in which GEICO (the defendants in state court) allegedly received, for example, a bill for $1061.63 but timely paid only a portion of the claim – $549.77. *See* Ex. C-1. GEICO does not directly dispute that some of the $2,100,000 that it seeks to recoup in the present action might have been paid with respect to bills that were not paid in full. It argues, however, that this fact is irrelevant because its right to recover money procured by fraud does not vary depending on whether the payment was part of a bill paid in part or a bill paid in full. *See* Oral Arg. Tr. at 14:21- 15:4 ("[I]f we partially pay a bill in reliance on the defendant's fraudulent misrepresentation . . . or don't pay another part of the bill because, for one reason or another it wasn't reimbursable, and we determined it wasn't reimbursable . . . . I don't think that affects for purposes of this motion our right to sue and recover for the money we did pay in reliance on a defendant's fraud or fraudulent omission.");

9

*see also id.* at 13:25 – 14:1-7 ("There may be some in which we got a bill for $500, for example . . . [and paid] the maximum permissible charge at a hundred dollars.").

I agree with GEICO. As I held in *Lyons*, efforts to recoup money procured by fraud are not disputes about the making of first party benefits. *See Lyons*, 843 F.Supp.2d at 379. This reasoning applies whether the amounts to be recovered were part of a bill that was paid in full or part of a bill that was paid in part. GEICO's affirmative claims to recover no-fault benefits that were induced as a result of fraud are outside the scope of Section 5106(b); accordingly, Defendants' motion to compel arbitration of GEICO's claims for damages is denied with respect to all claims seeking to recoup fraudulently-obtained monies.

B.  *The Pending Claims: Defendants' Motion for an Order of Abstention or, in the Alternative, an Order Compelling Arbitration of GEICO's Claim for Declaratory Relief*

GEICO seeks a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 and 2202 settling its rights with respect to "more than $7,800,000 in pending fraudulent billing submitted through the PC Defendants." Compl. ¶ 2. Specifically, it seeks a judgment declaring that the PC Defendants "have no right to receive payment for *any* pending bills submitted to GEICO," for the following reasons:

- (i) . . . "because the psychological services that are billed though the PC Defendants are not medically necessary or psychologically necessary, and are performed – to the extent they are performed at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Defendants;"

- (ii) . . . "because, in many instances, the psychological services that are billed through the PC Defendants are not provided in the first instance;"

- (iii) . . . "because the psychological services that are billed though the PC Defendants are performed – to the extent that they are performed at all – pursuant to illegal kickback arrangements between the Defendants and the referring clinics;"

- (iv) . . ."because the billed-for services are performed by independent contractors, rather than by the PC Defendants' employees."

Compl. ¶ 103-107 (emphasis added)

10

1. *Abstention*

The Defendants first argue that that I should abstain from adjudicating GEICO's declaratory judgment claim because there are hundreds of lawsuits Defendants have commenced in state court against GEICO seeking payments of unpaid no-fault benefits. Most of those cases, defendants' counsel represented at oral argument, "are already at an advanced procedural stage. Some are nearing the time of trial[;] some are actually already on the trial calendar." Oral Arg. Tr: 5:12-20. To the extent GEICO alleges that those claims are infected by fraud, the argument continues, it has "a panoply of remedies in state court that [it] may avail [itself] of." *Id*. at 6:19-21. Accordingly, the Defendants conclude, GEICO should not be permitted to litigate its declaratory judgment action in this court, and I should abstain.

Defendants contend that the advanced progress of many of the state court actions weighs strongly in favor of this Court abstaining from adjudicating GEICO's Declaratory Judgment claim. Under what is known as the *Wilton/Brillhart* abstention doctrine, district courts possess significant discretion to dismiss or stay claims over which they have subject matter jurisdiction where solely declaratory relief is sought. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995); *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942). Since GEICO seeks both declaratory relief and damages, the *Wilton-Brillhart* abstention doctrine does not apply here. *See State Farm Mut. Auto Ins. Co. v. James M. Liguori, M.D., P.C.*, 589 F.Supp.2d 221, 238 (E.D.N.Y. 2008).[8]

However, under the *Colorado River* abstention doctrine, s*ee Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976), a court may abstain from deciding a case that is part of parallel, duplicative litigation under "exceptional circumstances." First, I conclude that these actions are parallel because the federal declaratory judgment claim

---

[8] Defendants contend that GEICO's fraud claims can be better resolved in the state courts than in this action. But GEICO alleges a systematic, institutionalized fraudulent scheme designed to produce thousands of individual fraudulent no-fault claims. I reject the suggestion that such a defense is better raised and resolved (potentially in conflicting ways) in every one of literally hundreds of small-dollar cases pending in numerous different state courts, rather than in a single case like this one.

11

involves substantially the same claims and the same parties as the present action. *See Nat'l Union Fire Ins. Co. v. Karp*, 108 F.3d 17, 22 (2d Cir. 1997).

A district court deciding whether to stay or dismiss a federal proceeding that is parallel to one pending in a state court must consider six factors in order to decide whether *Colorado River* abstention is appropriate:

> (1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.

*Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) (internal quotations marks omitted). These factors are not applied mechanically, but carefully balanced "with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983).

This case provides a rather ordinary example of parallel litigation in state and federal court. "[A] pending action in a state court does not bar proceedings involving the same matter in a federal court," *Burnett v. Physician's Online, Inc.*, 99 F.3d 72, 76 (2d Cir. 1996). This dispute does not involve a res over which the state court has assumed jurisdiction, nor is the federal forum inconvenient. Moreover, exercising federal jurisdiction is not likely to lead to piecemeal litigation.

Even considering the advanced stage of some of the state court proceedings – in light of the heavy weight of factors in favor of the exercise of jurisdiction – I decline to invoke the "extraordinary and narrow exception" to this Court's duty to adjudicate a controversy properly before it. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at, 14 (internal quotation marks omitted). Of course, as GEICO acknowledges, to the extent a state court enters judgment with respect to any of the claims at issue in this federal litigation, that claim would drop out of the

scope of the declaratory judgment, barred by *res judicata*, thereby obviating any concern about inconsistent judgments. Oral Arg. Tr. at 15:15-19. Considering all the factors – including that that federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them" even if this results in seemingly wasteful duplicative litigation – I decline to abstain. *Colorado River*, 424 U.S. at 817.

2.  *The Motion to Compel Arbitration*

"But even if the Court disagrees with abstention," Defendants contend in the alternative, "then we have arbitration." *Id*. at 7:7-8.[9] To the extent that GEICO seeks to prove that particularized unpaid claims or pending claims need not be paid because the bills are fraudulent, New York law is clear that N.Y. Ins. Law § 5106(b) vests claimants with the right to compel arbitration as to any dispute over the payment of first party benefits. Claims that are pending and unpaid fall within the scope of § 5106(b). *See Lyons*, 843 F.Supp.2d at 380-81. GEICO does not contest the arbitrability of such claims, but contends that defendants have waived their right to arbitrate by virtue of the fact the Defendants are currently litigating in state court the majority of claims currently at issue.[10] Pls.' Mem. of Law at 17-18.

GEICO argues that New York law, rather than the Federal Arbitration Act ("FAA"), governs the arbitrability of the pending claims because a state statute – not a privately negotiated contract – is the source of the right to arbitrate. *See id.* at 5-6, 14. In contrast, Defendants contend that the FAA, not state law, governs the question of waiver because the

---

[9] All of the GEICO insurance contracts contain a provision along the lines of the following: "In the event any person making a claim for first party benefits and the Company do not agree regarding any matter relating to the claim, such person shall have the option of submitting such disagreement to arbitration pursuant to procedures promulgated or approved by the Superintendent of Insurance." *See* Defs.' Mem. of Law at 3 (quoting GEICO insurance policy). The parties agree that the GEICO insurance contracts are no broader or narrower than the statutory language of § 5106(b). *Id.* In any event, if an insurance company fails to offer an arbitration provision that is as at least as broad as the one mandated by statute, the statute supplies it by default. N.Y. Ins. Law. § 5103(h) (any no-fault policy "which does not contain provisions complying with the requirements of this article, shall be construed as if such provisions were embodied therein").

[10] GEICO submitted a Declaration from Joelle Roberts, a senior staff attorney employed at GEICO indicating that Defendants are actively prosecuting at least 675 no-fault collections actions against GEICO on behalf of Five Boro and Five Boro PLLC, and at least 1,700 no-fault collections actions on behalf of All-Boro. *See* Decl. of Joelle Roberts, ECF No. 47. The defendants agree that the parties are engaged in substantial litigation in the state courts. *See* Decl. of Gary Tsirelman ¶ 4-6; *see also* Defs.' Ex. D (listing "trial-ready" No Fault Claims between GEICO and the Defendants).

parties voluntarily bargained for the right to arbitrate by choosing to do business in New York State. Defs.' Reply Mem. of Law 5, Oct. 20, 2012, ECF No. 58.

In *Excel Imaging*, Judge Weinstein concluded that, absent evidence that the insurance company bargained for the right to arbitrate affirmative fraud claims through their private agreements, New York law, rather than the FAA, governs questions of arbitrability. *See Excel Imaging*, 879 F.Supp.2d at 263. Under New York law, "a party commencing an action will be assumed to have waived its right to arbitration when its use of the judicial process is clearly inconsistent with seeking arbitration at a later date." *Id.* (internal quotation marks and citation omitted). Applying this law, Judge Weinstein concluded that choosing to file a claim in court rather than arbitrate constitutes a waiver of the right to arbitrate. *Id.* (citing *Digitronics Inventioneering Corp. v. Jameson*, 52 A.D.3d 1099 (3d Dep't 2008)). I agree with Judge Weinstein's well-reasoned decision that, if New York law applies, the decision to litigate disputes over unpaid claims in state court precludes Defendants from now seeking to compel arbitration with respect to those same claims. *But see Grand Med. Supply*, 2012 WL 2577577, at * 2 (holding that "the framework for determining any disputed issues concerning arbitration must be determined in the context of the FAA").

Moreover, I would reach the same result even if I were to consider the waiver issue under the FAA. When considering waiver under the FAA, the Second Circuit's case law instructs courts to consider: "(1) the time elapsed from when litigation was commenced until the request for arbitration; (2) the amount of litigation to date, including motion practice and discovery; and (3) proof of prejudice." *La. Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 626 F.3d 156, 159 (2d Cir. 2010). Here, GEICO has offered uncontroverted evidence that it was forced to engage in substantial motion practice and discovery, and that it has incurred costs beyond the preliminary costs inherent in litigation. *See* Decl. of Joelle Roberts ¶¶ 9-10, 12-13, ECF No. 47. Prejudice for the purposes of finding

14

waiver can be substantive, (*i.e.* obtaining discovery not otherwise available), or it can be based on excessive cost and delay. *See Kramer v. Hammond*, 943 F.2d 176, 179 (2d Cir. 1991). However, "[i]ncurring legal expenses inherent in litigation, without more, is insufficient evidence of prejudice to justify a finding of waiver." *PPG Indus. v. Webster Auto Parts, Inc.*, 128 F.3d 103, 107 (2d Cir.1997). Even taking into consideration the strong federal policy in favor of arbitration, and the Second Circuit's caution that waiver "is not to be lightly inferred," *Leadertex v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 25 (2d Cir. 1995) (internal quotation marks omitted), I conclude that GEICO has presented persuasive evidence of prejudice if arbitration were permitted to proceed. *See La. Stadium & Exposition Dist.*, 626 F.3d at 159 (noting that prejudice is the most important of these three factors to be weighed in considering waiver under the FAA).[11]

a. *Claims Not Subject to Waiver*

Although GEICO seeks a declaration that the Defendants "have no right to receive payment for *any* pending bills submitted to GEICO," *see* Compl. ¶ 103-106 (emphasis added), GEICO acknowledges in its briefing that some unspecified number of unpaid bills are not currently the subject of state court litigation. *See* Pls.' Mem. of Law at 15 (indicating that the defendants have commenced state court litigation "on *the bulk* of their pending billing," covering "*most* of their more than $7,800,000.00 in outstanding fraudulent billing.") (emphasis added). Thus, the scope of the declaratory relief GEICO seeks is broader than the universe of claims as to which Defendants have waived their right to arbitrate. To the extent that the

---

[11] In reaching this conclusion, I consider the parties' active participation in prior litigation on the merits of the dispute, the costs of responding to discovery and engaging experts, and the delay in Defendants' decision to elect arbitration when they had the option to arbitrate at any point, including prior to GEICO's decision to commence litigation in federal court. *See S & R Co. of Kingston v. Latona Trucking, Inc.*, 159 F.3d 80, 83 (2d Cir. 1998) (indicating that the there are no bright-line rules in the waiver inquiry and the decision depends on the specific facts of each case). I also note that Defendants make no effort to differentiate among the hundreds of pending state court cases for purposes of their motion to compel arbitration. It is possible that some of those cases have not been litigated to the extent that, on an individualized basis, a finding of waiver would be appropriate. But Defendants, whose preferred form of relief with respect to all such pending cases is abstention, not arbitration, have not sought such a case-by-case approach.

15

Defendants seek arbitration of the declaratory judgment with respect to pending and unpaid claims that are *not* presently the subject of state court litigation, the motion to compel arbitration is granted, unless of course the Defendants choose to litigate these either in state court or in the context of this case.

C.      *Discovery*

In the interest of a stream-lined adjudication of these claim, and as discussed at oral argument, *see* Oral Arg. Tr. at 40:15-42:5, I respectfully direct the assigned magistrate judge to confer with the parties with an eye toward identifying a subset (or subsets) of the disputed claims that will proceed to discovery.  Though I will defer to my able colleague, Judge Scanlon, I think the parties might be assisted in resolving the entire case by a targeted resolution of part (or multiple parts) of the case.  Rather than proceeding to discovery on all of the many thousands of claims GEICO asserts were fraudulent, it may be useful to limit discovery to only some of the claims and then to proceed to motion practice and (if necessary) trial only on those claims.

## CONCLUSION

For the foregoing reasons, the Defendants' motion is denied in part and granted in part.

So ordered.

John Gleeson, U.S.D.J.

Dated: April 15, 2013
       Brooklyn, New York