

WWW.RIVKINRADLER.COM

**MAX GERSHENOFF**
PARTNER
(516) 357-3444
max.gershenoff@rivkin.com

May 20, 2013

**By ECF**
Hon. Vera M. Scanlon
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: Government Employees Ins. Co., et al. v. Five Boro Psychological Services, P.C., et al.
Docket No. 12-cv-2448(JG)(VMS) (E.D.N.Y.)

Dear Magistrate Judge Scanlon:

As the Court is aware, we represent Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co. (collectively "GEICO" or "Plaintiffs") in the above-referenced matter. We respectfully submit this letter in opposition to the May 15, 2013 letter motion by Defendants John Braun, Five Boro Psychological Services, P.C. ("Five Boro"), All Boro Psychological Services, P.C. ("All Boro"), and Five Boro Psychological and Licensed Master Social Work Services, P.L.L.C. ("Five Boro PLLC")(collectively the "All Boro Defendants") to quash or modify the subpoenas <u>duces tecum</u> GEICO served on several banks where All Boro, Five Boro, and Five Boro PLLC have maintained accounts. The subpoenas collectively are annexed hereto as Exhibit "A". As discussed herein, the subpoenas are not overbroad, do not seek irrelevant information, are not subject to limitation based on the RICO statute of limitations, and the All Boro Defendants' proposed grounds for quashal or modification do not stand up to any serious scrutiny. Accordingly, their motion should be denied.

To demonstrate why the subpoenas are in no way overbroad, it is worthwhile to briefly recount the allegations in GEICO's Complaint that underscore the need for the subpoenaed bank records. First, GEICO alleges that the All Boro Defendants' no-fault insurance billing was fraudulent in that – among other things – all of the billing was generated by illegal kickbacks that the All Boro Defendants paid in exchange for their patient referrals. Complaint ¶¶ 30-37, 89, and <u>passim</u>. Second, GEICO alleges facts indicating that in many cases these illegal kickbacks were not paid directly to the referring healthcare providers, themselves (<u>i.e.</u>, licensed healthcare professionals or professional corporations), but to unlicensed individuals and entities and secretly and unlawfully owned and controlled the referring healthcare providers. <u>Id</u>. Indeed, GEICO annexes – as Exhibit "4" to the Complaint – a federal indictment against Vladimir Grinberg, one of the All Boro Defendants' co-Defendants in this action, containing these selfsame allegations. <u>Id</u>. Third, GEICO alleges facts demonstrating that the All Boro Defendants went to extraordinary lengths to conceal the nature of the illegal kickbacks that they paid in exchange for patient

926 RXR Plaza
Uniondale, NY  11556
T 516.357.3000
F 516.357.3333

555 Madison Avenue
New York, NY  10022
T 212.455.9555
212.687.9044

21 Main Street
Court Plaza South
West Wing, Suite 158
Hackensack, NJ  07601
T 201.287.2460
F 201.489.0495



Hon. Vera M. Scanlon
May 20, 2013
Page 2

referrals – for instance, by disguising the kickbacks as "rent" payments, making payments to third parties in satisfaction of debts owed to those third parties by the referring providers or the unlicensed individuals and entities who controlled the referring providers, and by structuring checks of less than $10,000.00 apiece to the unlicensed individuals and entities who controlled the referring providers, which then were negotiated at check cashers. Id. Again, GEICO annexes – as Exhibit "4" to the Complaint – a federal indictment containing these same allegations. Id. Finally, GEICO alleges that the All Boro Defendants fraudulently billed for services provided – to the extent that they were provided at all – by independent contractors.

In this context, the All Boro Defendants plainly are aware that the subpoenaed bank records will reveal large-scale kickbacks to, or for the benefit of, the unlicensed individuals and entities that controlled their referring healthcare providers. As a result, they disingenuously ask the Court to limit the subpoenas so that only records indicating payments directly to the referring healthcare providers, themselves are produced. However, in light of the allegations in GEICO's Complaint to the effect that the kickback payments frequently were not made directly to the referring healthcare providers, themselves, there is no basis for the proposed limitation, much less quashal.

Considering these issues, the All Boro Defendants cannot legitimately argue that the subpoenaed bank records will not "reasonably … lead to other matters that could bear on, any issue that is or may be in the case". State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C., 375 F. Supp. 2d 141, 156 (E.D.N.Y. 2005).  Indeed, it is important to note that – though the All Boro Defendants unsurprisingly fail to cite the pertinent cases – Courts within this District routinely have denied similar motions to quash under analogous circumstances. See, e.g., State Farm Mut. Auto. Ins. Co. v. Tabakman, 2008 U.S. Dist. LEXIS 77784 at * 6 - * 7 (E.D.N.Y. 2008)(declining to quash bank subpoenas where plaintiff-insurer sought evidence of kickbacks); State Farm Mutual Automobile Insurance Company v. Kalika et al., Docket No. CV 04-4631 (CBA)(CLP) at Docket Entries Nos. 41 and 52 (under analogous circumstances, declining to quash bank subpoenas for professional corporation and clinic bank records); State Farm Mutual Automobile Insurance Company v. Grafman, et al., Docket No. CV 04-2609 (NG)(SMG) at August 11, 2006 and November 19, 2008 Minute Entries (declining to quash bank subpoenas under analogous circumstances).

In any case, the requested financial disclosure is relevant to demonstrate the scope of the racketeering conspiracies in which the Defendants allegedly participated. See, e.g., Allstate Ins. Co. v. Elzanaty, 2012 U.S. Dist. LEXIS 171962 at * 4 - * 5 (E.D.N.Y. 2012)(denying motion to quash bank subpoenas where accounts at issue were "depositories for monies from the alleged RICO corporations" and where the plaintiffs had "reason to believe that the accounts at issue [were] integrally connected to the alleged conspiracy"); Kalika, supra (declining motion to quash where bank records would "assist plaintiff in identifying whether there are any financial ties between the Clinics and the defendants … and how expansive the full scope of the scheme was."); State Farm Mutual Automobile Insurance Company et al v. Eastern Medical, P.C. et al., Docket No. CV 05-3804 (ENV)(RML) at March 21, 2007 Minute Entry (Court ordered disclosure of professional corporations' bank records, holding that



Hon. Vera M. Scanlon
May 20, 2013
Page 3

---

the "requested financial information will assist plaintiffs in identifying more fully the nature and scope of the alleged fraud scheme and in gathering admissible evidence for trial"). Considering that the subpoenaed bank records will identify the ultimate disposition of the money that was stolen from GEICO through the Defendants' fraudulent scheme, they therefore are essential to indicate the full scope of the alleged conspiracies.

Furthermore, the subpoenaed bank records are relevant to demonstrate the patterns of racketeering activity necessary to prevail on GEICO's civil RICO claims. To establish a "pattern" sufficient to satisfy the statute, GEICO must allege facts tending to show that "the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." See H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239, 109 S.Ct. 2893 (1989).  A threat of continuing criminal activity is presumed where the enterprise itself is engaged in the business of the racketeering activity. De Falco v. Bernas, 244 F.3d 286, 323 (2d Cir. 2001). By contrast, where "the enterprise primarily conducts a legitimate business," no presumption of a continued threat arises. Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc., 187 F.3d 229, 243 (2d Cir. 1999). In the present case, the subpoenaed bank records will demonstrate – or will lead to evidence that demonstrates – the extent to which the alleged RICO enterprises' revenues are derived from fraudulent no-fault submissions, and by extension the degree to which their businesses primarily are legitimate or not. Accordingly, they will make the fact of the requisite RICO patterns more or less likely than they would be without the evidence.

Finally, the All Boro Defendants argue that – in light of the four-year RICO statute of limitations – GEICO's subpoenas should be limited to four years prior to the commencement of the instant suit. This argument lacks any merit. First, the All Boro Defendants have not moved to dismiss based on the statute of limitations. Second, this is because, under established District precedent in cases of this exact type, any motion to dismiss based on the statute of limitations almost certainly would be denied as premature. See, e.g., Allstate Ins. Co. v. Elzanaty, 2013 U.S. Dist. LEXIS 3696 at * 58 - * 64 (E.D.N.Y. 2013)(declining pre-discovery motion to dismiss based on statute of limitations); State Farm Mut. Auto. Ins. Co. v. Rabiner, 749 F. Supp. 2d 94, 104 (E.D.N.Y. 2010)(same); State Farm Mut. Auto. Ins. Co. v. Grafman, 655 F. Supp. 2d 212, 226 (E.D.N.Y. 2009)(same); Allstate Ins. Co. v. Ahmed Halima, 2009 U.S. Dist. LEXIS 22443 at * 21 - * 22 (E.D.N.Y. 2009)(same); State Farm Mut. Auto. Ins. Co. v. Accurate Med., P.C., 2007 U.S. Dist. LEXIS 74459 at * 5 (E.D.N.Y. 2007)(same).

Accordingly, the All Boro Defendants' motion should be denied in its entirety.

              Respectfully submitted,

              RIVKIN RADLER LLP

              */s/ Max Gershenoff*
              Max Gershenoff (MG 4648)

cc:  All counsel via ECF